## UNITED STATES *v.* JOHNNY JONES, JR.

**No. 7434.**—Invoice dated Havana, Cuba, January 1944.
　　　　　　Certified January 1944.
　　　　　　Entered at Pittsburgh, Pa., March 10, 1944.
　　　　　　Entry No. 589.

## Second Division, Appellate Term

(Decided November 13, 1947)

*Paul P. Rao*, Assistant Attorney General (*Daniel I. Auster*, special attorney), for the appellant.
*Jerome G. Clifford* for the appellee.

Before KINCHELOE, LAWRENCE, and MOLLISON, Judges

KINCHELOE, Judge: This is an application for a review of the decision of the trial court filed by the Government under the provisions of section 501, as amended, of the Tariff Act of 1930. The merchandise consists of 102 dozen ladies' slippers and 148 dozen men's slippers, exported from Cuba on January 28, 1944, and thereafter entered at the port of Pittsburgh, Pa. The ladies' slippers were

entered at $8.40 per dozen and the men's slippers were entered at $8.50 per dozen, both items less carriage, less labor, cases included, plus tax of $57.71. The ladies' slippers were appraised at $10 per dozen and the men's slippers were appraised at $11 per dozen, both items plus sales tax of 2.75 per centum, plus cost of labor (packing), $5, plus cost of cases, $6.

The trial court, upon a full consideration of the entire record, found a value for the ladies' slippers of $7.20 per dozen pairs, and for the men's slippers, a value of $8 per dozen pairs, based on foreign value.

At the trial of this case counsel for the respective parties agreed that the proper basis of appraisement was foreign value. This question is therefore eliminated from further consideration. The record also establishes that the price of the merchandise did not vary according to the quantity purchased. There is therefore no question of a usual wholesale quantity involved in this case.

The plaintiff offered the testimony of only one witness, David Rothman, a partner in the importing firm, who testified in substance that when he was in Havana in October 1943 he saw in the window of a store "this sort of slipper" and he thought if he could buy a quantity of them he could sell them in this country. Upon further inquiry and investigation he found that these slippers could be bought; that there were a large number of manufacturers, but that they only made one or two dozen pairs per day; he found that they are really not manufacturers, but work in their own homes. "They have one room in it and they usually all work together, the husband and the wife and the children."

In November of the same year, when he was in Cuba again, he met a man named J. M. Wynschenk and "I told him what I wanted and said I was interested in buying a quantity of those slippers, and asked him if he knew a manufacturer who could make me a quantity. * * * He said he would discuss it with this manufacturer and then would come back the day after and let me know whether or not he was able to procure that quantity." He further testified that Wynschenk returned two days later and informed him he had found a manufacturer who could produce 200 to 250 pairs. "I said that would be all right with me, so that is the story of the shipment."

The witness also testified that he made inquiries as to what these slippers were worth and found that they were selling anywhere from $6.50 to $7.50 per dozen pairs; that he visited various manufacturers of these slippers and inquired as to the price. As to his relationship with Wynschenk, he stated that "I met this man first in November, and he told me he was to procure these slippers. He was sort of a general agent for manufacturers. He was a refugee, who just came to Cuba six months before and he was trying to make a living there, as an exporter or importer or manufacturers' agent. He said he could procure them. He could talk the language among those people. He

finally took me to various places and they were talking in Spanish which I did not understand, so anyway he finally came out with this order of the quantity that I wanted but the price was considerably higher." (R. 5.)

As to the details of that price, the witness stated "* * * he [Wynschenk] was supposed to accumulate them, and then he was to ship them on a sight draft. He would take care of the consular invoice and all fees, and they were delivered to me at $8.40 for the ladies' and $8.50 for the men's per dozen. He was supposed to receive a commission from the manufacturer; he said it was 5 per centum. As I said, these slippers were offered by other manufacturers for anywhere from $6.50 to $7.50, but this manufacturer said he couldn't make them in the quantity that I wanted, so I took the order when he said he would accumulate them for me, I put the order for 250 dozen and he said he would accumulate them for me and then ship them, so I went through with that." (R. 6.)

The witness also visited Cuba again in January 1944, and in March and April 1944, stating that when he returned to Cuba in March and April 1944 "* * * I finally found out who the manufacturer was, who actually made these slippers. On my previous visits, I never did find out who the manufacturer was, who actually made these 250 pairs of slippers, because it was always a hush-hush business. The agent was afraid the manufacturer would know his price. He was supposed to be working on a 5 percent commission, but I found out later it was not true; he made considerably more." (R. 7.)

According to the record the slippers in this case were manufactured by one Elias Zoll, by him delivered to Wynschenk, by Wynschenk delivered to Gil & Figueredo, who, as export agent of the importer, prepared the invoice and shipped the slippers. The record also shows that the manufacturers of these slippers in Cuba generally sell to retailers.

The defendant offered and there was received in evidence as collective exhibit 2 a copy of a letter addressed to David Rothman, Hotel Sevilla Biltmore, Havana, Cuba, dated January 22, 1944, signed by J. M. Wynschenk, and attached to said letter was a so-called price list showing different types of men's and ladies' slippers, and also different prices therefor. Among other things shown on this so-called price list is the following: "These quotations are firm February 20, 1944." In the body of said exhibit the following also appears:

The men's slipper ZP 505 is now running in my new range under the No. W–1 and the ladies' slipper ZP 404 is running under the number W–4. This is in case they want to repeat these two items.

Please take notice that to-days prices are as follows:
W–1 Men's slipper $11 per dozen
The same type of slipper for ladies, which runs under No. W–6 at $10 per dozen
W–4 Ladies' Slipper $10 per dozen

As to the statement in the above exhibit "These quotations are firm February 20, 1944" counsel for appellant contends that this statement should be construed to mean that the prices shown in the price list were firm from the date of the price list, January 22, 1944, until February 20, 1944, while counsel for appellee contends that this statement should be construed to mean that the prices were firm on and after February 20, 1944.

With reference to this phase of the case the witness, on cross-examination, testified as follows:

X Q. So that on January 22, 1944, you knew there was an advance made in the men's slipper, item ZP–505 to $11, and the ladies' slipper, item ZP–404, to $10, according to Collective Exhibit 2?—A. No, I did not because he changed the numbers at that time. It might have been an entirely different item for all I know. I didn't question what that said; I just put it in my pocket with the other papers.

X Q. You knew it referred to your order?—A. It might not have been merchandise that I ordered because it carried one number when I ordered it and now he refers to another number.

\*      \*      \*      \*      \*      \*      \*

X Q. So that on January 22, 1944, you had knowledge there was an increase in value of the items purchased by you from J. M. Wynschenk on November 22, 1943, is that correct?

\*      \*      \*      \*      \*      \*      \*

A. I had no knowledge except he gave me that paper and I put it in my pocket with other papers, but on further investigation I found the price had not gone up. I found out from the manufacturer that the price I paid was the right price, and he sent the notice to Wynschenk that I could buy at the same prices, $7.20 and $8, up to July. That's the notice the manufacturer sent to Wynschenk. (R. 20, 21.)

This record contains no suggestion that the merchandise represented by item W–1 and item W–4 was such as or similar to the merchandise represented by item ZP 404 and item ZP 505. For this reason alone, said exhibit 2 becomes absolutely immaterial so far as finding a value for the instant merchandise is concerned. It is therefore immaterial whether the purported price list in said exhibit became effective on January 22, or on February 20, 1944.

In our opinion, however, there is another and more compelling reason why this so-called price list is not material to the issues here presented. The record shows very definitely that Wynschenk was only a manufacturer's agent, selling these slippers for the manufacturer at the manufacturer's prices plus a commission of 5 per centum. Thus the manufacturer is the man whose offers and sales constituted a market for this merchandise, and the record is that anyone could buy from the manufacturer at the same price, $7.20 and $8 up to July 1944. "That's the notice the manufacturer sent to Wynschenk." Wynschenk himself had no slippers to sell to anyone, and while he occupied that position, he could not create a market value for these

slippers of $10 and $11 per dozen pairs by simply typing and handing to the importer herein the so-called price list attached to exhibit 2. And likewise Wynschenk's statements contained in said exhibit 2 regarding the effective date, etc., of the so-called price list were not binding upon this importer or anyone else. The inferences to be drawn from Wynschenk's conduct in connection with this transaction are made clear from this record, and require no further comment by us.

The record contains ample evidence to support the finding of values by the trial court, to wit: $7.20 per dozen pairs for the ladies' slippers and $8 per dozen pairs for the men's slippers. However, since the entered values are higher than the values found herein, the former must be used as the basis for the assessment of duties, by virtue of section 503 of the Tariff Act of 1930.

In view of the manner in which this case was tried, it presents nothing but a question of fact to be decided upon the weight of the evidence.

Upon a full consideration of this record, we find as facts:

1. That the merchandise herein consists of men's and ladies' slippers, exported from Havana, Cuba, on January 28, 1944, and entered at the port of Pittsburgh, Pa.

2. That the price of these slippers does not vary according to the quantity purchased.

3. That Havana is one of the principal markets for the sale of this merchandise in Cuba.

4. That foreign value is the proper basis to be used in the appraisement of these slippers.

5. That the weight of the evidence establishes the proper dutiable foreign value to be as follows: Item ZP 404, ladies' slippers, $7.20 per dozen pairs, item ZP 505, men's slippers, $8 per dozen pairs.

As matter of law, we hold the proper dutiable foreign values of the involved slippers to be as set out in finding of fact No. 5. The judgment of the trial court is accordingly affirmed. Judgment will be rendered accordingly.