(Reap. Dec. 10586)

JUDSON SHELDON INTERNATIONAL CORPORATION v. UNITED STATES

Entry No. 25989.

(Decided September 12, 1963)

*Wallace & Schwartz* (*Barnes, Richardson & Colburn* by *Joseph Schwartz* of counsel) for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Samuel D. Spector* and *Harold L. Grossman,* trial attorneys), for the defendant.

WILSON, Judge: This is an appeal for reappraisement of certain merchandise invoiced as "MICA FILMS" and "Sections—Unfinished Silvered Mica Condensers," exported on May 21, 1960, by Intercontinental Industries, Inc. (Far East Branch), Tokyo, Japan, and consigned to Intercontinental Industries, Inc., Chicago. Plaintiff herein is the customs broker which made entry of the involved goods. The merchandise was invoiced and entered at various unit prices per thousand pieces, f.o.b. Tokyo. It was appraised at the invoiced prices, plus 13 per centum, on the basis of United States value, as defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

Both parties concede that the correct basis of appraisement for the involved merchandise was United States value of "such" merchandise (R. 4, 23). The importer, however, contends that the correct United States value is the same as the invoiced prices.

The plaintiff called three witnesses and introduced 14 exhibits. The defendant called no witnesses, but introduced one letter (defend-

ant's exhibit A). In substance, the plaintiff's witnesses testified as follows:

The imported merchandise is used by the radio and television industry, computer manufacturers, and also the missile manufacturers (R. 26). On May 21, 1960, the date of exportation of the merchandise from Japan, the importing company was selling and offering for sale in the United States goods identical to the merchandise produced in Japan and described on the invoices. Certain pricelists, issued by plaintiff (plaintiff's collective exhibits 5 and 6, and plaintiff's exhibit 5-A), covering merchandise, such as that imported, were in effect on the date of the exportation of the involved goods. These pricelists were followed by the importer in its sales and offers of sales in the United States. The same price applied to the merchandise sold in any quantity and was for 1,000 pieces, f.o.b. buyer's plant. According to the testimony, there were no restrictions as to the disposition or use of the merchandise by the purchaser. The prices applied to all markets of the United States for domestic consumption (R. 35). It further appears from the testimony that there were, at the time in question, other dealers in the United States who sold and offered for sale imported merchandise similar to and the same as that here involved and sold by the plaintiff (defendant's exhibit A).

The record in this case discloses that the importer attempted to get information concerning the profit and general expenses of the other importers for the year 1960 relating to their handling of such merchandise. The following is part of the testimony given on that point:

Q. Have you been able to obtain their profit, and general expenses, for the year 1960?—A. No.

Q. Have you tried?—A. Yes.

Q. How did you try; and what did they tell you?—A. I called the individuals on the phone, and asked to speak to an executive of the company, preferably the treasurer or controller, and when I was able to reach one of the individuals I asked if they would care to divulge their general expenses and profit on these items, and naturally they told me it was none of my business.

＊     ＊     ＊     ＊     ＊     ＊     ＊

Q. Who are the importers of mica film and condensers?—A. There is United Minerals in New York; Asheville-Schoonmaker, also in New York: Cavalier——

JUDGE MOLLISON: Located where?

THE WITNESS: In North Carolina; in Durham, North Carolina.

Q. Are there any others?—A. There are a few others, but I was not able to contact them.

Q. Do you know their names?—A. Ford Mica Company, of New York. That's the only ones to my knowledge.

Q. When you say you were not able to contact them, what do you mean?

＊     ＊     ＊     ＊     ＊     ＊     ＊

A. I was unable to locate the company in the New York area, which I was under the impression that was where they were located. [R. 36–37.]

It was also testified that letters were written to various companies and that Dun & Bradstreet was consulted (R. 50). Plaintiff's witness Roman, vice president of the importing corporation, admitted, on cross-examination, that he received no information from Dun & Bradstreet to enable him to ascertain the general expenses and profits of the other companies in this country which were purchasing merchandise such as here imported (R. 51). There is no testimony, however, of any visits to any of the dealers involved, or of any attempt to have such dealers appear in court and testify concerning their profits and expenses.

On the question of the relationship between the importer and purchasers of its merchandise in this country, plaintiff introduced testimony to the effect that purchasers of the imported merchandise in the United States were in no instance members of the family of the importer or of the families of any stockholders, officers, or directors of the importing company. (R. 38.) The testimony shows that the raw material for the manufacture of the imported merchandise was mined in India and that the importer did not own the mines (R. 47), but purchased the raw material in India and shipped it to Intercontinental Industries, Inc. (Far East Branch), Tokyo, to be processed into the merchandise as exported. It was testified that the importer, at the time in question, did not own or control the manufacturing company, but bought the manufactured material from the Japanese company.

In an attempt to establish the profit and expenses of the importer, which are claimed deductible from the selling price of the involved merchandise, the plaintiff called Mrs. Lorraine Faford, bookkeeper of Intercontinental Industries, Inc., of Chicago. She testified, in part, as follows:

Q. At my request, have you prepared schedules from your books, showing the selling prices and expenses incurred in connection with the two invoices involved in this case?—A. Yes, I have.

Q. Is this sheet which I show you, consisting of two pages, the schedule which you have prepared for the mica films in this case?—A. Yes.

\* \* \* \* \* \* \*

Q. Did you also prepare a similar schedule for condensers on this invoice?—A. Yes, I did.

Q. Is this the one, that I just showed you?—A. Yes. [R. 64–65.]

The schedules were introduced in evidence as plaintiff's exhibits 7 and 8, respectively. (R. 65–66.) The witness further testified as follows:

Q. Now, will you look at Exhibit 7. Referring to each of the items, you have a notation of selling price; is that correct?—A. That's right.

Q. Where did you get those selling prices?—A. The selling prices, from the price list.

Q. You also have a notation entitled—what is it—general expenses?—A. Yes.

Q. And, where did you get that item?—A. For the general expenses I computed the yearly sales, which were the net yearly sales, which were $1,121,000; then I computed only the mica and section sales, which were $1,023,000, or 91% of the total sales; then I computed the total expenses, which were $284,000. I took 91% of that, which came out to $259,000. $259,000 in proportion to the $1,023,000 is 25%, so I applied the 25% against this individual item, and in this case it came out to fifty-seven cents. [R. 66.]

The witness then explained that she arrived at transportation charges by taking the lowest rate of transportation that was used in 1960 and prorating the charges in the same proportion as that used in computing general expenses.

The issue in this case is, of course, what is the proper dutiable value of the imported merchandise based upon United States value at the date of exportation.

The relevant provisions of the statute are as follows:

Section 402(c), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165:

(c) UNITED STATES VALUE.—For the purposes of this section, the United States value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal market of the United States for domestic consumption, packed ready for delivery, in the usual wholesale quantities and in the ordinary course of trade, with allowances made for—

(1) any commission usually paid or agreed to be paid, or the addition for profit and general expenses usually made, in connection with sales in such market of imported merchandise of the same class or kind as the merchandise undergoing appraisement;

(2) the usual costs of transportation and insurance and other usual expenses incurred with respect to such or similar merchandise from the place of shipment to the place of delivery, not including any expense provided for in subdivision (1) ; and

(3) the ordinary customs duties and other Federal taxes currently payable on such or similar merchandise by reason of its importation, and any Federal excise taxes on, or measured by the value of, such or similar merchandise, for which vendors at wholesale in the United States are ordinarily liable.

If such or similar merchandise was not so sold or offered at the time of exportation of the merchandise undergoing appraisement, the United States value shall be determined, subject to the foregoing specifications of this subsection, from the price at which such or similar merchandise is so sold or offered at the earliest date after such time of exportation but before the expiration of ninety days after the importation of the merchandise undergoing appraisement.

Plaintiff, in challenging the appraised value, assumes the twofold obligation of not only showing that the appraisement was erroneous,

but also of establishing some other dutiable value. *Kenneth Kittleson* v. *United States,* 40 CCPA 85, C.A.D. 502. To do this, the appealing party must meet every material issue involved in the case, and, if he fails to do so, the value fixed by the appraiser remains in full force and effect. *Brooks Paper Company* v. *United States,* 40 CCPA 38, C.A D. 495.

Plaintiff introduced in evidence several pricelists to substantiate the claimed values. One of these (collective exhibit 6) is a pricelist, apparently effective as of "12/5/60," as per notation on the said pricelist. Such pricelist, promulgated and effective some time after the date of exportation of the merchandise herein involved, is not probative of any claimed values therein. *Johnny Jones, Jr.* v. *United States,* 17 Cust. Ct. 459, Reap. Dec. 6580, affirmed in *United States* v. *Johnny Jones, Jr.,* 19 Cust. Ct. 303, Reap. Dec. 7434. Further, said pricelist states: "We are not to send this out, but merely quote as we receive orders." A so-called "office" pricelist of this character, as to which evidence of circulation in the trade or of sales made in accordance with said pricelist is lacking, is not substantive proof in support of plaintiff's claimed values. *North American Asbestos Corp.* v. *United States,* 43 Cust. Ct. 500, Reap. Dec. 9518, affirmed in *United States* v. *North American Asbestos Corp.,* 44 Cust. Ct. 801, A.R.D. 123.

Plaintiff contends, in effect, that the price at which such or similar merchandise was freely sold or offered for sale in the principal market of the United States for domestic consumption, packed ready for delivery, in the usual wholesale quantities, on May 21, 1960, the date of exportation, is that set forth in the pricelists offered in evidence by the plaintiff (exhibits 5 and 5–A). Although plaintiff's witness testified that these pricelists, dated, respectively, July 22, 1959, and January 1, 1960, were in effect on May 21, 1960, the date of exportation of the involved goods, there is some doubt in the court's mind as to the sufficiency of these lists to establish the price contended for by the plaintiff. The record in this case discloses discrepancies between the actual selling prices of the merchandise here involved and the prices shown on the alleged pricelists for the involved goods. Item J 1, listed on plaintiff's collective exhibit 5 as being offered at $2.18 per 1,000 pieces delivered, is indicated on plaintiff's exhibit 7 as being sold at $2.27 per 1,000 pieces delivered. Item P 1, listed as being offered at $2.15 per 1,000 pieces, was sold, according to said exhibit 7, at $2.24 per 1,000 pieces delivered. Such variances between the actual selling prices and the prices indicated on the pricelists as shown establish the necessity of proof of sales and sales prices of other companies in this country who imported merchandise such or similar to that there involved.

However, if the pricelists offered herein by the plaintiff were accepted as adequate evidence, there are other serious inadequacies in plaintiff's proof. The court is not satisfied that the evidence as to "profit" and "general expenses" is sufficient to support plaintiff's claimed values. According to the evidence, no separate books were kept by the importer covering the profit and general expense items as applied to the imported merchandise alone. The testimony indicates that the only records kept by the company show entries of sales of all types of merchandise by the company; that, in order to determine the profit and general expenses to be assigned to the involved merchandise, it was necessary to assume that the same amount of profit proportionately was derived from the sale of the films and condensers as was derived from the sales of other merchandise; and that the general expenses relating to the handling of the condensers and films were exactly the same in proportion as the general expenses incurred in handling the other merchandise sold by the importer.

Plaintiff's exhibit 9 purportedly represents sales for 1960 for mica film and condensers and was intended to show the percentages which the items in question bore to the total sales of the business. Plaintiff's exhibit 11 is an itemization, indicating the expenses of the company for 1960 covering mica film and condenser sales. Plaintiff's exhibit 12 is an itemized statement, indicating all of the expenses of the company for 1960. Plaintiff attempts to establish the general expenses for the involved merchandise by applying to such merchandise a percentage in relation to the percentage for general expenses covering all sales of merchandise made by plaintiff. This is unsatisfactory proof, since it may well be that it cost more to handle other types of merchandise, or less, as the case may be, than the outlay incurred for handling the imported merchandise. It is also very probable that the amount or margin of profit differs as applied to the various types of merchandise involved. The court is definitely of the opinion that the evidence offered does not meet the burden resting upon the plaintiff to establish the amount of profit and general expenses properly deductible for the ascertainment of the value of the involved merchandise.

Neither is the record made by the plaintiff sufficient to meet the burden of proof covering another aspect of the profit and general expense phases of the case. It is conceded that there was competition in the market by at least one other importer who sold such merchandise. It has not been established by the evidence that the importer herein was reasonably diligent in its efforts to secure the facts concerning the profit and expenses of its competitor. No effort was made

to subpoena a representative of that domestic dealer, and no attempt was made to confer directly with any such representative. It is not a sufficient answer to say that such attempts would have been futile. Plaintiff, on this record, not only has failed to overcome the presumption of correctness attaching to the appraiser's finding of value, but, further, has failed to establish the correctness of the claimed values.

In view of the court's finding that the proof is inadequate on the question of profit and general expenses, it is not necessary to consider the matters relating to the relationship between the Japanese exporting company bearing the same name as the importing company and the latter. The situation as a whole in that area lends some support to the Government's contention that the facts relating to that part of the case "invite scrutiny," since "If the transaction between these parties is not in the ordinary course of trade because the exporter is employed by the importer to merely process the merchandise, receive payment for such processing, and then export it to the original party, then the sales by the importer in the United States are not sales in the ordinary course of trade." However, the court does not feel called upon to determine whether the transactions between the exporter and the importer herein were in the ordinary course of trade, since the plaintiff has failed in its proof on the question of profit and general expenses properly deductible from the price at the time of exportation at which such or similar merchandise was freely sold or offered for sale in the principal market of the United States for domestic consumption.

On the basis of the record here presented, I find as facts:

1. That the involved merchandise consists of mica films and mica condenser sections, exported from Japan on or about May 21, 1960.

2. That the involved merchandise was entered and appraised subsequent to the enactment of the Customs Simplification Act of 1956.

3. That such or similar merchandise was freely sold at the time of exportation of the involved merchandise to the United States, in the principal market of the United States for domestic consumption, packed ready for delivery, in the usual wholesale quantities and in the ordinary course of trade, with allowances made for any commission usually paid, or the addition for profit and general expenses usually made, and for the usual costs of transportation and insurance and other usual expenses, including allowance for the ordinary customs duties and other Federal taxes payable on such or similar merchandise by reason of its importation.

4. That the evidence adduced by the plaintiff in this case fails to establish that the appraised values are erroneous and that other values claimed by the plaintiff are correct.

I conclude as matters of law:

1. That the proper basis for the determination of the value of the merchandise here involved was United States value, as that value is defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

2. That the values returned by the appraiser, which are presumptively correct, have not been overcome.

3. That the proper value of the merchandise in controversy is the appraised value in each case.

Judgment will issue accordingly.