(Reap. Dec. 10911)

LEYDEN CUSTOMS EXPEDITERS, INC., A/C LOS ANGELES TILE JOBBERS, ET AL. *v.* UNITED STATES

Entry No. 898614, etc.

(Decided March 16, 1965)

*Glad & Tuttle* (*Edward N. Glad* and *Norman C. Schwartz* of counsel) for the plaintiffs.

*John W. Douglas,* Assistant Attorney General (*Sheila N. Ziff,* trial attorney), for the defendant.

WILSON, Judge: These are appeals for reappraisement of certain glass mosaic tiles, exported from Italy between the period from July 1959 through January 1961. The appeals in question are limited to the 20 by 20 millimeter glass mosaic tiles bearing the following numbers: 50, 50J, 51J, 52, 52X, 54, 54X, 55X, 56, 57, 58, 60N, 61N, 64N, 66, 80, 80N, 81, 81N, 82N, 83N, 84S, 85R, 86, 87, 96, 96N, 98N, 101N, 108N, 109, 109S, 110, 111N, 116N, 118S, 119S, 126S, 131J, and 134R.

The merchandise was appraised on the basis of export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956. The appraised values covering the color groups of the glass mosaic tiles in question are as follows:

| Color group designation | Appraised value (Price per sq. meter) |
|---|---|
| N | $3. 35 |
| S | $3. 70 |
| K-R | $4. 57 |
| J | $15. 32 |

The parties to the controversy agree that export value, as defined, *supra,* is the proper basis of appraisement for the involved merchandise.

It appears that the appraised values as given above are based on sales by the manufacturer of certain colors of mossaic tiles to importers other than Los Angeles Tile Jobbers (R. 33–34). Plaintiffs contended that such sales to other importers would not have been in the ordinary course of trade or in the usual wholesale quantities and must, therefore, be ignored in arriving at dutiable value. Originally, plaintiffs had contended that the invoiced values were the proper export values for the items in question. Instead, plaintiffs now seeking "to amend its [*sic*] pleading to conform to the proof herein," contend that the color

group designations should be appraised in accordance with certain pricelists, dated April 10, 1958, or June 1, 1960, attached to plaintiffs' collective exhibit 3 (R. 28), as follows:

| Color group designations | Imports prior to June 1, 1960 (Prices per sq. meter) | Imported after June 1, 1960 (Prices per sq. meter) |
|---|---|---|
| N | $3. 00 | $2. 52 |
| S | $3. 40 | $2. 73 |
| K–R | $4. 27 | $3. 67 |
| J | $12. 00 | $9. 45 |

Section 402 (b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, provides as follows:

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

A number of exhibits were received in evidence. Plaintiffs' exhibit 1 (R. 17) consists of a photostatic copy of a pricelist from Vetrum, the manufacturer herein, dated June 1, 1961, identified as the pricelist in effect from 1959 to 1961 (R. 9). Platintiffs' collective exhibit 2 (R. 19) consists of photostatic copies of two different contracts between the manufacturer, Vetrum, and Los Angeles Tile Jobbers, dated, respectively, September 30, 1954, and April 5, 1957. The first contract recites in part as follows:

Gentlemen:

We desire to enter into a contract with you, in consideration of the sum of $10.00, and other good and valuable consideration, receipt of which is hereby acknowledged, granting to you the sole and exclusive territorial rights for the distribution and sale of all of the products manufactured by us, said sole and exclusive privileges extending to all states of the United States including the Hawaiian Islands for a period of five (5) years from the date of this agreement.

WE DO FURTHER WARRANT as consideration for the execution of this agreement, that we shall not, during the pendency of this agreement, execute any contract with any other person, firm or corporation, to manufacture, distribute or sell any of said products or any of them, in the territories hereinabove named.

WE FURTHER AGREE that if we receive any orders, requests, correspondence, inquiries or checks in payment of any of our said products or any of them, from any of the territories hereinabove referred to, that all of said orders, requests, inquiries or checks shall be immediately referred to you.

*       *       *       *       *       *       *

The contract, dated April 5, 1957, from Vetrum to Los Angeles Tile Jobbers recites in part as follows:

Gentlemen:

We desire to enter into a contract with you in consideration of the sum of Ten Dollars ($10.00) and other good and valuable considerations, which is hereby acknowledged, granting to you the sole and exclusive territorial rights for the distribution and sale of all of the products manufactured by us, said sole and exclusive territorial privileges extending to the entire United States of America, including the Hawaiian Islands and British Columbia, for a period of five (5) years from the date of this agreement, on condition that you will place orders with us for a minimum quantity of 10,000 (ten thousand) square meters every year.

WE DO FURTHER WARRANT as consideration for the execution of this agreement, that we shall not, during the pendency of this agreement, execute any contract with any other person, firm or corporation, to manufacture, distribute or sell our said products or any of them, in the territories hereinabove named.

WE FURTHER AGREE that if we receive any orders, requests, correspondence, inquiries or checks in payment of our said products or any of them, from any of the territories hereinabove referred to, that all of said orders, requests, inquiries or checks shall immediately referred [sic] to you.

   *      *      *      *      *      *      *

Plaintiff's collective exhibit 3 (R. 28) consists of an affidavit of Mario Dal Carlo, managing director of the manufacturer, Vetrum, sworn to September 10, 1963. The affiant, who stated in said affidavit that he had personal knowledge about the selling prices of the "Venetian Glass Mosaics" manufactured by his firm, further stated that, prior to June 1, 1961, his firm offered glass mosaics for exportation to the United States at prices listed on certain export pricelists, copies of which, dated April 10, 1958, and June 1, 1960, were attached to the affidavit; that the prices shown on the pricelists in question did not vary because of the quantity purchased of first quality material; that said pricelists represent offers to all persons who would care to buy, without restriction as to territory or use.

Mr. Dal Carlo further stated, in the affidavit referred to above, that, prior to June 1, 1961, certain discounts had been granted by his firm in the sale of inferior or second quality merchandise; that, on June 1, 1961, his firm entered into an exclusive agency agreement with Los Angeles Tile Jobbers, Inc., Los Angeles, Calif., wherein the manufacturer herein granted the latter the exclusive agency of the U. S. A. territory; that, since that date, the manufacturer had sold and offered for sale "Venetian Glass Mosaics" only to Los Angeles Tile Jobbers, Inc., at the prices reflected in the pricelist in effect at that time; and that the manufacturer has not offered "Venetian Glass Mosaics" to any other importer in the United States since June 1, 1961. According to the affiant, the pricelist in effect on June 1, 1961, was superseded on March 28, 1962, by another pricelist; that the prices at which the manufacturer offered and sold Venetian glass mosaics to Los Angeles

Tile Jobbers, Inc., on and after March 28, 1962, were the prices shown on the pricelist, effective that date, less 10 per centum; and that said prices did not vary because of the quantity sold.

Defendant's collective exhibit B is a report of Customs Representative Edward L. Hughes, dated December 18, 1959, containing a report of an investigation made by him of the manufacturer, Vetrum, S.r.l., Venice-Mestre, Italy, with respect to its pricing practices, together with a pricelist attached to said report and a list of sales of glass mosaic tiles to the United States in 1959, except sales made to Los Angeles Tile Jobbers. Said report will be hereinafter referred to as is deemed pertinent in the determination of the question here presented.

Plaintiffs introduced the testimony of Mr. Andrew J. Campbell, president of Los Angeles Tile Jobbers. He testified that he had an exclusive contract with the Vetrum factory of Mestre, Italy, for the importation of glass mosaic tile into the United States. The witness stated that the prices paid for the merchandise under consideration were in accordance with a pricelist received from Vetrum (plaintiffs' exhibit 1); that the prices reflected on the invoices covering the imported merchandise represent the prices paid for the goods. Mr. Campbell further testified that he did not know of any other purchasers in the United States of tiles such as those in question (R. 24). However, it was subsequently stipulated between counsel for the respective parties that some 22 of the 40 designated tiles in issue were sold by the manufacturer herein to other importers in the United States during the period under consideration (R. 33–34).

The Government called as its witness Mr. Morris Halperin, line examiner of glass mosaics at the port of New York. He testified that he was familiar with the importations from Vetrum and had seen pricelists put out by that manufacturer, which had been obtained by him from various importers, including Los Angeles Tile Jobbers (R. 34–35). Mr. Halperin stated that plaintiffs' exhibit 1 and defendant's collective exhibit B represent typical pricelists of Vetrum. He explained that the manufacturer produces mosaics in various colors; that it does not have a separate price for each individual color, but that colors which take the same price are grouped together and are given one letter, "say price category N, price category S, price category X or J" (R. 35–36), i.e., all colors bearing the same letter are grouped together in the same price category (R. 35–36), and that this applies although the pricelists might be different to different importers (R. 36).

In order for the plaintiffs to establish a value for the involved merchandise different from that found by the appraiser, it is incumbent upon them not only to overcome the presumption of correctness attaching to the appraiser's action, but also to establish that the claimed values are correct. *H. S. Dorf & Co., Inc., a/c Joseph H.*

*Meyer Bros.* v. *United States*, 41 CCPA 183, C.A.D. 548. In the case at bar, plaintiffs contend that the weight of the evidence establishes that, during the period in question, i.e., July 1959 through January 1961, the manufacturer was selling to all persons who cared to buy glass mosaic tiles in accordance with the pricelists, dated April 10, 1958, and June 1, 1960 (plaintiffs' collective exhibit 3). In my opinion, however, the plaintiffs herein have not sustained their burden of proof in support of the claimed values. While the statement of the affiant in plaintiffs' collective exhibit 3, above noted, is to the effect that the involved glass tiles were sold in accordance with the prices as listed in the aforesaid pricelists for the respective items, this statement is not corroborated by any substantial evidence from which the court can find the facts to support the claimed values. Plaintiffs' right to introduce evidence by means of affidavit cannot be questioned. It is expressly given to him by statute. 28 U.S.C., section 2633. The fact that the evidence in question was introduced by affidavit does not, however, affect the substantive issue of whether the statements appearing therein constitute substantial evidence of the ultimate facts sought to be proved thereby. *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495, and *Kenneth Kittleson* v. *United States*, 40 CCPA 85, C.A.D. 502. Accordingly, the statement by the affiant in plaintiff's collective exhibit 3 as to the prices claimed to represent the proper values for the merchandise is a mere conclusion. Such a statement, unsupported by any records or by any sales or offers to sell, does not constitute substantial evidence sufficient to overcome the presumption of correctness attaching to the appraiser's valuation. As was stated by the court in *Morris Friedman* v. *United States*, 52 Cust. Ct. 660, A.R.D. 178:

Conclusory statements are not proofs of the facts on which the conclusions might be based. It is for the court to find, on the weight of factual evidence and where export value is the basis of appraisement, what price is and in what principal market. Mere assertion of the finding that is claimed by an importer, is not adequate proof of facts sufficient for the court to make the findings.

Further, there is no evidence in this record that the pricelists upon which the plaintiffs rely were circulated in the trade so as to establish a free offering for the involved merchandise in the ordinary course of trade. These pricelists, therefore, lack probative force to support the values claimed by the plaintiffs. *Judson Sheldon International Corporation* v. *United States*, 51 Cust. Ct. 374, Reap. Dec. 10586, affirmed in *Id.* v. *Id.*, 54 Cust. Ct. 773, A.R.D. 183.

The defendant, on its part, as noted in the report of the customs representative (defendant's collective exhibit B), has established that sales were made by the manufacturer to purchasers in the United States other than the importer herein. Further, as disclosed by the report in question, the prices varied according to quantities purchased

and the status of the purchaser, a situation contrary to that claimed by the plaintiffs to exist. In addition, no substantial evidence has been introduced to establish the "usual wholesale quantities" or the "ordinary course of trade" for the involved merchandise, proof of which and of the price at which such merchandise was freely sold in the principal market is an essential element to support plaintiffs' claimed values. *Reliance Trading Corp. of Illinois (Elder)* v. *United States*, 53 Cust. Ct. 352, Reap. Dec. 10785. The plaintiffs have also failed to establish that the appraised values are erroneous.

Based upon the record as made, I find as facts:

1. That the involved merchandise consists of glass mosaic tiles, 20 by 20 millimeters in size, pasted on paper sheets, exported from Italy between July 1959 and January 1961, which bear the following numbers: 50, 50J, 51J, 52, 52X, 54, 54X, 55X, 56, 57, 58, 60N, 61N, 64N, 66, 80, 80N, 81, 81N, 82N, 83N, 84S, 85R, 86, 87, 96, 96N, 98N, 101N, 108N, 109, 109S, 110, 111N, 116N, 118S, 119S, 126S, 131J, 134R.

2. That the merchandise was appraised in accordance with section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

3. That the merchandise is not identified on the final list, published by the Secretary of the Treasury pursuant to said act.

4. That the evidence in this case is insufficient to warrant a finding that the values claimed by the plaintiffs are correct, and, further, that the presumption of correctness attaching to the appraiser's finding of value has not been overcome.

I conclude as matters of law:

1. That export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of the value of the merchandise here involved, and

2. That such statutory value is, in each case, the value returned by the appraiser.

Judgment will be entered accordingly.